IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

PAMELA K. OCHALA,

          Plaintiff,

v.                                CIVIL ACTION NO. 3:08-1027

DYNCORP INTERNATIONAL LLC and
DYNCORP INTERNATIONAL FZ-LLC,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Dyncorp International LLC's Motion for Summary Judgment (Doc. 47). Defendant filed the motion October 21, 2009. On November 22, 2009, Plaintiff filed a memorandum in opposition. *See* Plaintiff's Resp. to Dyncorp International LLC's Motion for Summary Judgment (Doc. 61). Plaintiff did not contradict the facts stated in Defendant's motion for summary judgment, but presented legal arguments in opposition. Plaintiff's response, however, was untimely the Court will not consider those arguments; it shall be **STRICKEN** from the record.[1] After reviewing the available evidence, the Court **FINDS** that the uncontested facts support an entry of summary judgment in favor of Defendant. The Court **GRANTS** Defendant Dyncorp LLC's Motion for Summary Judgment.

---

[1]The Court is aware that Plaintiff filed a motion to extend the response deadline from November 6, 2009 until November 9, 2009. *See* Plaintiff's Motion to Extend Time to Respond to Dyncorp International LLC's Motion for Summary Judgment (Doc. 52). The motion to extend was itself filed on November 5, 2009. While the motion to extend remains pending, more than two weeks have passed since the *requested* deadline. The motion to extend is moot by Plaintiff's inaction.

In addition the Plaintiff has not made any showing that she served Dyncorp FZ. While she contends that service upon its parent corporation should suffice, the Court recognizes that the two defendants are separate corporate entities. The business relationship between them will not substitute for proper service upon each, as individual parties to this lawsuit. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925) (parent-subsidiary relationship, by itself, it not sufficient to justify severance of the subsidiary as an agent for the parent corporation). For these reasons, the Court also **GRANTS** Dyncorp International, LLC's Motion to Dismiss Defendant Dyncorp International, FZ-LLC (Doc 42).

**Standard of Review**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The failure of a party to respond does not guarantee summary judgment on behalf of the movant. *See Custer v. Pan American Life Ins. Co.* 12 F.3d 410, 416 (4th Cir. 1993). Although this failure may leave facts uncontested, the moving party must still demonstrate that the facts on record support its entitlement to judgment as a matter of law. *Id.* The duty of the court to review the record is made clear in Fed. R. Civ. P. 56(e), which provides, "if the adverse party does not so respond, summary judgment *if appropriate*, shall be entered against the adverse party." *Id.* (quoting Rule 56).

**Background**

Defendant Dyncorp International, LLC, ("Dyncorp") is a corporation which provides military and commercial aviation support in the United States and abroad. Defendant Dyncorp International FZ, LLC ("Dyncorp FZ") is an affiliate, operating out of Dubai in the United Arab Emirates. This suit arises from an employment offer and subsequent withdrawal of that offer made to Plaintiff, Pamela Ochala. Ms. Ochala has filed claims alleging four counts: 1) Tortious Interference with Business Relations; 2) Misrepresentation; 3) Detrimental Reliance/Promissory Estoppel; 4) Intentional Infliction of Emotional Distress.

In the spring of 2006, Plaintiff was living in Huntington, West Virginia, working as the Director of Contracts for Trex Enterprises Corporation. She had extensive experience in contract negotiation and formation prior to the time started with Trex, and was the person primarily responsible for contract negotiation and formation at that company. Ms. Ochala began working with the Trex in San Diego, and the company agreed to retain Ms. Ochala and allow her to work remotely when she moved to Huntington, in 2005. According to her deposition testimony, Ms. Ochala seems to have been generally happy with her position at Trex and perceived herself to have been fairly compensated for her work. *See* Dep. of Pamela Ochala, July 7, 2009 (Doc. 471 Attach. 1).

Sometime during the month of May, 2006, Stephens Little, Inc., a recruiting firm, contacted Ms. Ochala about a possible position with Dyncorp FZ in Dubai. After some consideration Ms. Ochala indicated her interest to Stephens Little. The Dyncorp FZ position paid substantially more than Trex.[2] According to her deposition, Ms. Ochala planned to move to Dubai for a few years, but maintain her house in Huntington. She hoped that after a few years living abroad she would have earned enough money to return to Huntington and retire.

Ms. Ochala communicated with a Dyncorp representative throughout the month of June 2006. Dynacorp FZ first tendered an offer of employment on June 18, 2006. The letter began, "[w]e are pleased to offer you 'at-will' employment with Dyncorp International, FZ-LLC." June 14, 2006 Letter from Dyncorp FZ to Pamela Ochala (Doc. 47 Attach 1) (although the latter is dated June 14th it was transmitted via email on the 18th). The letter went on to explain the compensation and benefits Ms. Ochala could expect working as a "Sr. Contracts Manager" for the company in Dubai. On June 28, 2006, Dycorp FZ sent a revised offer advising Plaintiff she would be able to participate in a management incentive plan. The June 28, 2006 letter restated that employment was "at-will." June 28, 2006 Letter from Dyncorp FZ to Pamela Ochala (Doc. 47 Attach 1). On or about July 12, 2006, Ms. Ochala submitted a 30 day notice of resignation to Trex. She signed an sent an acceptance letter to Dyncorp FZ on July 13, 2006. In her deposition, Ms. Ochala admitted that she knew employment with Dyncorp FZ would be at-will, and that she was familiar with the meaning of the term. *See* Dep. of Pamela Ochala, July 7, 2009 (Doc. 471 Attach. 1).

---

[2]According to the record, the base salary was not significantly different than what Ms. Ochala earned at Trex. The job, however, required her to live in Dubai and she would not have been subjected to US taxes. The company also agreed to provide housing and living expenses for her in Dubai. *See* June 28, 2006 Letter from Dyncorp FZ to Pamela Ochala (Doc. 47 Attach 1).

-4-

Ms. Ochala understood that she would begin her employment for Dyncorp FZ, in Dubai, on September 1, 2006. Both she and Dyncorp made preparations for her move.. Then, on August 14, 2006, a representative from Dyncorp FZ contacted Ms. Ochala by phone. The company informed her that it was in the process of downsizing the Dubai office and would be forced to withdraw her offer. On August 25, 2006 Dyancorp FZ sent a letter confirming the withdrawal of her offer, but giving her notice of six other contract management positions then available with the comopany. The open positions were in the following locations: Afghanistan; Iraq; Falls Church, Virginia; Cocoa Beach, Florida; and Irving, Texas. After receiving details on each position, Ms. Ochala decided she was not interested in any of them. She did not seek re-employment with Trex because she learned, upon resignation, that the company would not be refilling her Director of Contracts position. Ms. Ochala currently works as a Sales Representative for Woodmen of the World, earning a salary far less than what she was paid by Trex or would have earned with Dyncorp FZ.

Dyncorp explains that a new CEO took charge of the company around the time it offered a position to Ms. Ochala. This new CEO, Herb Lanese, implemented streamlining and cost-cutting measures across the company. As a result, twelve positions were eliminated from the Dubai office. Ms. Ochala's position was one of those affected by the downsizing, hence the termination of her offer. Dyncorp argues that it was well within its rights to withdraw Ms. Ochala's offer because both she and the company agreed her employment would be at-will.

**Analysis**

Less than one year ago, the West Virginia Supreme Court decided a case on similar facts and resolved similar claims to those brought before this Court. *See Hatfield v. Health Management Associations of West Virginia*, 672 S.E.2d 395 (W.Va. 2008). In *Hatfield,* a hospital employee was

terminated – without cause – after working only four days. *Id.* at 399. She filed suit against the parent company of her employer, asserting claims of breach of contract, breach of the duty of good faith and fair dealing, detrimental reliance, tortious interference and the intentional infliction of emotional distress. *Id.* at 400. The court rejected each claim in turn. Consistent throughout the opinion was the principle that at-will employment is terminable by either party at any time. *See e.g. id.* at Syl. Pt. 2. In this case, the offer from Dyncorp FZ to Ms. Ochala was clearly for at-will employment. That condition was explicit in all correspondence and in every offer. Moreover, Ms. Ochala, as a person experienced in contract negotiation and formation, should have understood the meaning of this condition and its implications. Her deposition testimony confirms that she did.

This Court sees only one divergent fact that could be grounds to distinguish *Hatfield* from the facts of this case. In *Hatfield,* the plaintiff did begin her term of employment, even though she only worked for four days. In this case, Ms. Ochala never started her job with Dyncorp FZ. Courts are split as to whether this type of factual distinction merits different legal treatment.. *See Goff-Hamel v. Obstetricians &Gynecologists, P.C.*, 588 N.W.2d 798 (Neb. 1999) (reviewing the split and cases on each side).

This facts of this case illustrate why it may be illogical to grant an employee greater security before starting a position than they would be guaranteed in that position. Under that type of precedent, the following scenario might well have taken place: 1) Dyncorp FZ offers Ms. Ochala a position in Dubai, which Ms. Ochala accepts; 2) Dyncorp hires a new CEO which eliminates the position for which Ms. Ochala has been hired; 3) Based on precedent that an employee must begin work before being terminated, Dyncorp brings Ms. Ochala to Dubai (or allows her to make her own way there); 4) After one day of employment, and after a move to a new country, Ms. Ochala is fired

5) She receives one day's salary and one day's benefits for her trouble. Clearly, under the West Virginia Supreme Court decision in *Hatfield*, an at-will employer may fire an employee – without cause – no matter how short a time that person has been employed. Preventing an employer from terminating an offer prior to the beginning of employment would create strange incentives for employers and could place both employers and new hires in an awkward position.

Although the West Virginia Supreme Court has not addressed the question of whether an offer of at-will employment may be withdrawn without legal consequence, both the Fourth Circuit Court of Appeals and the Federal District Court of South Carolina have. Each determined that an offer of at-will employment can be revoked, without repercussion, prior to the time the employee begins. *See Jaffe-Spindler Co. v. Genesco, Inc.*, 747 F.2d 253 (4th Cir. 1984); *White v. Roche Biomedical Laboratories, Inc.,* 807 F.Supp. 1212 (D.S.C. 1992).

The Court finds the reasoning in *Jaffe-Spindler Co.* and *White* persuasive, and sees no reason why the West Virginia Supreme Court would distinguish *Hatfield* from these facts. As more fully explained below, in regards to each claim asserted, the principles and implications of the doctrine of employment at-will extinguishes each of Plaintiff's claims. The law and record evidence is sufficient to support summary judgment for the Defendant.

**I.     Plaintiff's Detrimental Reliance/Promissory Estoppel Must Fail Because There Was No Promise of Job Security or Reasonable Reliance on Such a Condition of Employment.**

In *Hatfield*, the West Virginia Supreme Court established a two part test for a claims asserting detrimental reliance on an offer of at-will employment. 672 S.E.2d at 402. First, the plaintiff must show, by clear and convincing evidence, that there was an explicit promise or implication of job security, other than at-will employment. *Id.* If the first prong is established, the

plaintiff must further show, by preponderance of the evidence, the she reasonably relied on such a promise. *Id.*

Here there is no basis in the record, much less clear and convincing evidence, on which the Court could find a promise or implication of something more than at-will employment. Each of the written offers of employment made by Dyncorp FZ to Ms. Ochala explicitly stated that she was to be employed "at-will." Moreover, there is no foundation for establishing reasonable reliance. The language in the employment offer was clear. Ms. Ochala, herself, had extensive experience negotiating and forming contracts. In deposition she confirmed that she was familiar with the meaning of at-will employment. Lacking evidence of either a promise or reasonable reliance, Plaintiff's claim for detrimental reliance/promissory estoppel must fail.

## II. Plainiff's Misrepresentation Claims Fail Because There is No Evidence of a Misrepresentation or Justifiable Reliance Thereon.

In West Virginia, a prima facie case for fraudulent misrepresentation requires proof of the following elements:

> 1) that the act claimed to be fraudulent was the act of the defendant or induced by him;
>
> 2) that it was material and false; that the plaintiff relied upon it and was justified under the circumstances in relying upon it; and,
>
> 3) that he was damaged because he relied upon it.

Syl Pt. 1 *Lengyel v. Lint*, 280 S.E.2d 66 (W.Va. 1981). West Virginia also recognizes a cause of action for negligent misrepresentation. *See Folio v. City of Clarksburg*, 655 S.E.2d 143 (W.Va. 2007). In *Folio*, the court stated, "[o]ne under a duty to give information to another, who makes an erroneous statement when he has no knowledge on the subject and thereby misleads the other to his

injury, is as much liable in law as if he had intentionally stated a falsehood." *Id.* at 405 (quoting Syl. Pt. 1, *James v. Piggott*, 74 S.E. 667 (1910)).

First and foremost, this claim must fail because there is no evidence of misrepresentation. There is no evidence that Dyncorp FZ gave any false or misleading information in the job offer or in discussions surrounding the offer. Second, there is no basis for justifiable reliance. As other courts have explained the offer of at-will employment is an offer that can be revoked at any time. *See White,* 807 F.Supp.1212, 1219-20 (D.S.C. 1992). To expect anything other than the right to collect wages accrued for work performed is unreasonable. *Id.; Colosi v. Electri-Flex Co,* 965 F.2d 500, 504 (7th Cir. 1992).

### III.       Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails Because the Termination of At-Will Employment Is not Atrocious or Intolerable Conduct.

To prevail on a claim for intentional infliction of emotional distress a plaintiff must establish four elements:

> 1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;
>
> 2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;
>
> 3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and,
>
> 4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could expect to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs., Inc.* 504 S.E.2d 419 (W.Va. 1998).

In *Hatfield,* the court found that termination of at-will employment, without cause, after four days could not support a claim of intentional infliction of emotional distress, as a matter of law. *Hatfield,* 672 S.E.2d at 404. This Court must similarly find that the act of withdrawing an offer of at-will employment is not conduct so atrocious, intolerable, or extreme and outrageous as to exceed the bounds of decency. Plaintiff's claim for intentional infliction of emotional distress must be denied.

**IV.     Plaintiff's Claim for Tortious Interference with a Business Relationship Fails Because Plaintiff Voluntarily Left Her Previous Employment.**

To establish prima facie proof of tortious interference with a business relationship, a plaintiff must show,

> 1) existence of a contractual or business relationship or expectancy;
>
> 2) an intentional act of interference by a party outside that relationship or expectancy;
>
> 3) proof that the interference caused the harm sustained; and
>
> 4) damages.

*Hatfield* 672 S.E.2d at 403 (quoting Syl. Pt. 2 of *Torbett v. Wheeling Dollar Sav. & Trust Co.,* 314 S.E.2d 166 (W.Va. 1983)).

Plaintiff's claim of tortious interference with a business relationship fails on the second and third prongs of the test. Neither Dyancorp or Dyncorp FZ intentionally interfered with the employment contract between Ms. Ochala and Trex. Defendant offered Ms. Ochala employment on terms she chose to accept. Based on her own assessment, she voluntarily decided to leave employment with Trex and accept at-will employment with Dyncorp FZ. She did so knowing her

new employment terms and at did so at her own risk. *See White*, 807 F.Supp. at 1220 ("The Court notes the apparent harshness of this ruling, the result of which is that an employee who resigns one job for other at-will employment does so at his peril. However, to hold otherwise would create an anomalous result and would undermine the doctrine of employment at-will in this state.") Courts have consistently held that there is no tortious interference when a plaintiff voluntarily quits her job to accept at-will employment with the defendant. *See e.g. Polio v. Perkins Rests., Inc.* 617 F.Supp. 380 (N.D. Iowa 1985) (holding that there was no basis for tortious interference; [b]ecause plaintiff voluntarily terminated his employment with [his prior job], he has no basis to assert a tort of interference with an existing contractual relationship."); *Fincke v. Phoenix Mut. Life Ins. Co.,* 448 F.Supp. 187 (W.D. Pa. 1978) ("Since [the plaintiff] terminated his employment with [his former employer], [the plaintiff] has no cause to assert a tort of interference with a contractual relationship against [the defendant]. This Court finds no reason to reach a different conclusion in this case.

## Conclusion

For the reasons explained above, because Dyncorp's offer of employment was clearly at-will, the Court **GRANTS** the Defendant's Motion for Summary Judgment (Doc. 47). Additionally, the Court **GRANTS** Dyncorp International, LLC's Motion to Dismiss Defendant Dyncorp International, FZ-LLC. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: November 23, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE